**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| **BRADLEY K. F.,[1]** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **vs.** ) | **Case No. 3:19-cv-1100-GCS[2]** |
| ) | |
| **COMMISSIONER OF SOCIAL** ) | |
| **SECURITY,** ) | |
| ) | |
| **Defendant.** ) | |

## MEMORANDUM & ORDER

**SISON, Magistrate Judge:**

In accordance with 42 U.S.C. § 405(g), Plaintiff, represented by counsel, seeks judicial review of the final agency decision denying his application for Disability Insurance Benefits ("DIB") pursuant to 42 U.S.C. § 423.

### PROCEDURAL HISTORY

Plaintiff applied for disability benefits in June 2015, alleging disability as of March 14, 2015.   The claim was denied in October 2015 and was again denied upon reconsideration in July 2016.   After holding an evidentiary hearing, an ALJ denied the application on October 19, 2018.  (Tr. 15-29).  The Appeals Council denied review, and the decision of the ALJ became the final agency decision.   (Tr. 1).   Administrative remedies have been exhausted and a timely complaint was filed in this Court.

---

[1]     In keeping with the court's practice, Plaintiff's full name will not be used in this Memorandum and Order due to privacy concerns.  *See* FED. R. CIV. PROC. 5.2(c) and the Advisory Committee Notes thereto.

[2]     This case was assigned to the undersigned for final disposition upon consent of the parties pursuant to 28 U.S.C. § 636(c).  *See* (Doc. 8, 16).

ISSUES RAISED BY PLAINTIFF

Plaintiff raises the following points:

1. The ALJ erred by failing to account for moderate deficits in concentration, persistence, or pace within the RFC finding.

2. The ALJ erred in cherry-picking evidence of minimal activity and equating it with a capacity to perform substantial gainful activity.

APPLICABLE LEGAL STANDARDS

To qualify for DIB, a claimant must be disabled within the meaning of the applicable statutes.  Under the Social Security Act, a person is disabled if she has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 423(d)(1)(a).

To determine whether a plaintiff is disabled, the ALJ considers the following five questions in order: (1) Is the plaintiff presently unemployed? (2) Does the plaintiff have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the plaintiff unable to perform his former occupation? and (5) Is the plaintiff unable to perform any other work? *See* 20 C.F.R. § 404.1520.

An affirmative answer at either step three or step five leads to a finding that the plaintiff is disabled.  A negative answer at any step, other than at step three, precludes a finding of disability.  The plaintiff bears the burden of proof at steps one through four. Once the plaintiff shows an inability to perform past work, the burden then shifts to the

Commissioner to show that there are jobs existing in significant numbers in the national economy which plaintiff can perform. *See Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001).

It is important to recognize that the scope of review is limited. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Thus, this Court must determine not whether Plaintiff was, in fact, disabled at the relevant time, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made. *See Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). The Supreme Court defines substantial evidence as, "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019)(internal citations omitted).

In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does <u>not</u> reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. *See Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). While judicial review is deferential, it is not abject as this Court does not act as a rubber stamp for the Commissioner. *See Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010) and cases cited therein.

### THE DECISION OF THE ALJ

The ALJ followed the five-step analytical framework described above. She determined that Plaintiff had not worked at the level of substantial gainful activity since the alleged onset date. He was insured for DIB through December 31, 2019.

The ALJ found that Plaintiff had severe impairments of coronary artery disease/ischemic heart disease, obesity, neurocognitive disorder/organic brain syndrome, depression, and anxiety.

The ALJ found that Plaintiff had the residual functional capacity ("RFC") to "perform medium work . . . except he cannot climb ladders, ropes or scaffolds.  He can perform work limited to simple, routine, repetitive tasks involving only simple, work-related decisions, few, if any workplace changes, and no work with an assembly line or conveyor belt."

Based on the testimony of a vocational expert, the ALJ concluded that Plaintiff was unable to perform any past relevant work.  He was able to do other jobs that exist in significant numbers in the national economy.

### THE EVIDENTIARY RECORD

The Court has reviewed and considered the entire evidentiary record in formulating this Memorandum and Order.  The following summary of the record is directed to Plaintiff's arguments.

1.    **Agency Forms**

Plaintiff was born in 1967 and was 51 years old on the date of the ALJ's decision. (Tr. 240).  Plaintiff said he stopped working in 2015 because of his conditions.  Plaintiff worked as a commercial airline pilot since October 1999.  (Tr. 243-244).

In a Function Report submitted in December 2015, Plaintiff said he suffered a traumatic brain injury that caused short-term memory loss.  The Report also indicated that Plaintiff could not follow instructions without forgetting or asking.  Plaintiff said he

cares for his pets by giving them food, water, baths, and walks. Plaintiff requires reminders and help with taking care of himself and the pets. Plaintiff said he only drives short distances due to experiencing headaches when he drives too far. Plaintiff said his wife handles all financial aspects because he forgets to pay bills. Plaintiff said he likes watching sports, but cannot remember who played or who won the game. Plaintiff said his condition affects his talking, memory, task completion, concentration, understanding, ability to follow instructions, and ability to get along with others. Plaintiff said he consistently refers back to instructions in order to follow them and forgets spoken instructions. He also does not handle stress or changes in routine well, and he is depressed. (Tr. 269-272).

### 2.    Evidentiary Hearing

Plaintiff had two evidentiary hearings, one in February 2018 and another in September 2018, per Plaintiff's request. (Tr. 35, 46). Plaintiff was represented by an attorney at both evidentiary hearings. (Tr. 37, 48).

In March 2015, Plaintiff had a heart attack that caused him to fall and hit his head, resulting in a concussion. Plaintiff said he will not drive more than a five-mile range. (Tr. 55-56). Plaintiff said he has neuro-cognitive issues such as short-term memory loss, an inability to manage his own medications, and difficulty focusing and concentrating. Plaintiff testified to having daily issues with depression and anxiety. (Tr. 62-65). Plaintiff said he has not undergone much mental health treatment as he did not have the money for it. Plaintiff said he can only sit for about fifteen minutes before needing to get up and move around because he gets antsy. (Tr. 68). The ALJ ordered another psychological

consultative examination due to a lack of mental health records.  (Tr. 77).  Plaintiff's wife testified indicating that Plaintiff stopped going to speech therapy and occupational therapy because of scheduling issues and because she had to take him due to the appointments being in St. Louis.  They ultimately decided to switch those appointments to once a week.  (Tr. 84-85).  At the supplemental hearing in September 2018, Plaintiff said he had not gotten better at all.  (Tr. 39).

A vocational expert ("VE") testified that a person with Plaintiff's RFC could not do his past work as a pilot.  (Tr. 42, 78-79).  The ALJ presented hypotheticals to the VE which corresponded to the ultimate RFC findings.  The VE testified this person could do jobs such as hand packer or packaging jobs, material over type jobs, and janitorial jobs. (Tr. 42).

### 3.    Relevant Medical Records

Plaintiff presented to Dean Schueler, a family medicine specialist, nineteen times between January 15, 2015 and April 6, 2018.[3]  Plaintiff reported the following:  feeling stressed; feeling depressed; having bad focus since his heart attack; depending on his wife for details, finances, housework, and activities of daily living; having the ability to dress himself and cook simple things; having the inability to follow directions and to do things like bake cookies; having poor short-term memory and anger issues since his traumatic brain injury; having a short temper; having difficulty functioning; needing to repeat tasks multiple times; experiencing work difficulties; and having confusion about

---

[3]      Tr. 319, 324, 328, 332, 533, 537, 542, 547, 552, 557, 628, 634, 641, 647, 657, 662, 667, 850, 856.

his medications.[4]  Dr. Schueler noted the following about Plaintiff:  he had an appropriate mood and affect; he was oriented to time, place, person and situation; and he had normal memory, but also had impaired memory.[5]  The assessments included:  concussion, traumatic brain injury, depression, memory loss, and stress reaction.[6]  Plans included: seeing a neurologist; making medication modifications; seeking depression treatment, MRI's,  and occupational therapy; performing home exercises; and working on memory function.[7]

In quality of life questionnaires from February and May 2015,  Plaintiff reported being moderately bothered by emotional problems.  Plaintiff reported being able to take care of himself such as eating, dressing, bathing, and using the toilet, as well as being able to do various household chores.  (Tr. 388-389).

Plaintiff presented to Karissa Genenbacher, a speech-language pathology student, and underwent a speech language pathology evaluation on March 14, 2015.  Plaintiff presented with cognitive flexibility deficits and reported changes in thinking and memory function.  The speech pathologist noted Plaintiff had a reduced ability to perform tasks requiring executive function.  Recommendations included writing down information and keeping a calendar for events.  (Tr. 425).  The same day, Plaintiff also presented to Keki Balsara, a cardiologist, and Dr. Balsara noted grossly intact cranial

---

[4]        Tr. 319, 328, 542, 552, 628, 634, 641, 647, 659, 667, 850.

[5]        Tr. 321, 326, 330, 334, 535, 539, 545, 549, 554-55, 559, 631, 637, 644, 650, 660, 664, 669, 853, 859.

[6]        Tr. 322, 327, 330, 540, 545, 559, 632, 638, 644-45, 650, 660, 670, 854.

[7]        Tr. 327, 330, 540, 545, 555, 559, 632, 638, 644-45, 650, 660, 670, 854.

nerves.  (Tr. 477-478).

Plaintiff underwent a CT scan of his head and brain on March 16, 2015.  The impression was:  "[n]o acute intracranial abnormality . . ."  (Tr. 459).

Plaintiff presented to Ms. Genenbacher on March 20, 2015, for a speech pathology appointment.  An assessment revealed Plaintiff was alert and oriented and had intact memory and attention.  (Tr. 426-427).  Plaintiff also underwent an occupational therapy appointment with Hilary Stanley, an occupational therapist.  (Tr. 431).  OT Stanley noted Plaintiff was able to maintain attention, had intact insight, and required verbal cues twenty-five percent of the time.  OT Stanley encouraged Plaintiff to complete remedial tasks to enhance memory.  (Tr. 433).

Plaintiff presented to Shane LaRue, a cardiologist, nine times between March 2015 and December 2017.  (Tr. 503, 703, 706, 708, 711, 716, 719, 721, 723).  Plaintiff reported depression, memory loss, and easily becoming upset and frustrated, but he also reported some improvement in his symptoms.  (Tr. 503, 703, 706, 719, 721, 723).  Dr. LaRue noted Plaintiff was alert and oriented and was in no acute distress.  (Tr. 707, 709, 712, 717, 720, 722, 724).

Plaintiff presented to Mallory Henry, a physician assistant, on December 7, 2015, and reported memory problems, depression, and sleep difficulties.  An examination revealed Plaintiff was in no distress, was alert and oriented, was able to follow simple and complex commands, and had clear and fluent speech.  The assessment included post concussive syndrome, memory loss, and depression.  Recommendations included depression treatment, behavioral therapy, formal memory testing, and cognitive

exercises.  (Tr. 616-618).

Plaintiff presented to Paul Malcharek, an internist, on March 2, 2016.  (Tr. 569).  An examination revealed a normal mood and affect.  (Tr. 571).

Plaintiff presented to Stephen Vincent, a licensed clinical psychologist, on June 30, 2016, for a consultative mental status examination.  Plaintiff reported the following: changes in speech and language, memory and processing speed; episodes of irritability; lack of judgment; problems making decisions; apathy; forgetfulness; minimal response to his current medications; and difficulties following detailed directions without repetition and simplification.  (Tr. 596-597).  Dr. Vincent concluded Plaintiff had comorbid depression.  Dr. Vincent noted Plaintiff had "neuropsychological deficiencies including changes in regard to speech and language, memory and cognition . . ."  Diagnoses included major depression, major neurocognitive disorder, generalized anxiety disorder, and low-average intellectual abilities.  (Tr. 600).

Plaintiff presented to Raymond Leung, an internist, for a consultative physical exam, on June 30, 2016.  Plaintiff reported head trauma and decreased short-term memory.  A physical exam revealed that Plaintiff had normal speech and affect, was alert and oriented, and had decreased memory.  The impression was decreased short-term memory.  (Tr. 602-604).

Plaintiff presented to Thomas "Joey" Malbrough, a neurorehabilitation physician, three times between December 2016 and June 2017.  (Tr. 832, 834, 837).  Plaintiff reported significant problems with short-term memory and increased irritation and agitation.  (Tr. 832, 834).  Dr. Malbrough noted the following about Plaintiff:  he was in no apparent

distress; he was alert and oriented; he had fluent speech; he had an appropriate fund of knowledge; he lost his train of thought at times; and he expressed his frustration several times.  (Tr. 833, 835-836, 838).  The assessment included symptoms stemming from a possible anoxic brain injury or concussion.  (Tr. 836, 838).  Plans included the following: occupational therapy and speech language therapy referrals for memory and cognitive impairments; neuropsychological testing to clarify Plaintiff's cognitive deficits; mood stabilization medications; and follow-up appointments.  (Tr. 833, 836, 838).

Plaintiff presented to Courtney Amin, a physician assistant, on January 6, 2017.  An examination revealed Plaintiff had an appropriate mood and affect, had normal insight and judgment, and was oriented to time, place, person and situation.  (Tr. 652-655).

Plaintiff presented to Kelly Taylor, an occupational therapist, six times between April and June 2017.  (Tr. 736, 747, 759, 773, 785, 799).  Plaintiff and his wife reported he had increased frustration and agitation, vestibular-related symptoms at home, and memory issues.  (Tr. 759, 773, 799).  OT Taylor noted Plaintiff had significant short-term memory deficits, frequent loss of train of thought, deficits in emotional regulation, and executive disfunction.  Plaintiff also had moderate cognitive impairments with significant difficulty with delayed recall, attention, and immediate recall.  (Tr. 739, 750, 763, 777-778, 785, 799).   Recommendations included additional therapy, practicing emotional regulation at home, and further cognitive training.  (Tr. 739, 750, 763, 778, 785, 799).  On May 22, 2017, OT Taylor noted that Plaintiff had not shown significant progress due to Plaintiff only attending a limited number of visits.  (Tr. 750).  Plaintiff was discharged on

June 28, 2017, due to poor attendance and family hardships.  (Tr. 739).

Plaintiff presented to Sarah Hackert, a speech-language pathologist, three times between April and June 2017.  (Tr. 741, 782, 786).  SLP Hackert noted Plaintiff was calm, cooperative, anxious, and uninhibited.  She further noted that Plaintiff had cognitive deficits, memory impairments, attention issues, mood swings, and executive dysfunction.  Plaintiff had also not been seen for a while due to cancelling all appointments because of family illness.  Due to the lack of visits, Plaintiff had not made much progress.  (Tr. 744, 786, 792).  The assessment included cognitive deficits, memory impairments, and mood and behavior barriers.  Plans included continuing cognitive communication treatment.  (Tr. 782, 806).

Plaintiff saw Stephanie Moran on May 3, 2017, who is a speech-language pathologist.  Plaintiff reported his own efforts to increase functional memory at home and noted that he would shut down if his routine was thrown off.  Plaintiff also reported feeling overstimulated and cranky.  (Tr. 766).  SLP Moran noted Plaintiff had delayed memory, severe deficits in immediate memory, and moderate deficits in attention.  (Tr. 770).  Recommendations included continuing speech therapy to increase attention and memory and engaging in independent problem solving.  (Tr. 772).

Plaintiff presented to Brandy Mooney, a speech-language therapy student, on June 29, 2017.  (Tr. 731).  Plaintiff reported significant memory impairments accompanied by frequent mood swings.  Ms. Mooney noted Plaintiff had delayed memory, severe deficits in immediate memory, and moderate deficits in attention.  No further appointments were indicated due to Plaintiff's inability to attend the appointments.  (Tr. 734-735).

Plaintiff presented to Kathryn Marlow, a physiatrist, on December 12, 2017. Plaintiff reported difficulties with short-term memory, train of thought, and concentration. He also reported mood instability and depression. (Tr. 828). An examination revealed that the Plaintiff was alert and in no acute distress. He also exhibited normal behavior and was oriented, appropriate, and had the ability to hold conversations. However, Plaintiff became noticeably frustrated during a discussion of certain topics. Plans included a referral for neuropsychological testing and a referral to psychiatry to address cognitive and behavioral deficits. (Tr. 830-831).

Plaintiff presented to Kayla Wuebbels, a family nurse practitioner, on December 28, 2017. (Tr. 622). The review of systems was negative for memory impairment, anxiety, depression, and insomnia. An examination revealed Plaintiff had normal memory and had an appropriate mood and affect. He also had normal insight and judgment and was oriented to time, place, person, and situation. (Tr. 625).

Plaintiff presented to Dr. Vincent on March 21, 2018, and underwent a psychological evaluation at the request of the agency. Plaintiff reported difficulties with sleep, depression, irritability, and agitation. He also reported mild changes with memory, focus, and concentration. Dr. Vincent noted Plaintiff was oriented to person, place, time, and situation. Plaintiff also had normal speech and a euthymic mood and affect. Plaintiff was also logical and not psychotic. Plaintiff was additionally cognitively intact, but was preoccupied at times. Dr. Vincent's diagnostic impressions included major depression and generalized anxiety disorder. In a medical source statement, Dr. Vincent noted Plaintiff had mild restrictions in understanding, remembering, and

carrying out simple instructions.  Dr. Vincent also noted that Plaintiff had moderate restrictions in his ability to make judgments on simple and complex work-related decisions and to understand, remember, and carry out complex instructions.  Dr. Vincent noted Plaintiff had mild restrictions with interacting appropriately with the public and coworkers.   He also noted Plaintiff had moderate restrictions with responding appropriately to usual work situations and changes in a routine work setting.  (Tr. 842-847).

Plaintiff presented to Dr. Malcharek on June 6, 2018, to follow up on his depression.  Plaintiff reported the following issues:  short-term memory, depression that was moderate in severity, and problems concentrating nearly every day.  Plaintiff also reported being tired and having little interest or pleasure in doing things.   An examination revealed Plaintiff was in no acute distress.  Plaintiff also had a normal mood and affect.  The assessment included depression and short-term memory loss.  Plans included a mental health counselor referral, follow-up visits, blood tests, medication management, and a neurology referral.  (Tr. 901-905).

Plaintiff presented to Dr. Malcharek on July 12, 2018, to follow up on depression and medication changes.   Plaintiff reported improved depression and improved insomnia.  An examination revealed Plaintiff was in no acute distress.  Plans included follow-up visits.  (Tr. 898-899).

Plaintiff presented to Jigar Mankad, a neurologist, on August 2, 2018, complaining of short-term memory loss.  Plaintiff also reported easily losing his train of thought, becoming very emotional and frustrated, feeling occasionally suicidal, and dealing with

depression.  (Tr. 889).  An examination revealed Plaintiff was in no distress.  He was also alert and oriented to person, place, and time.  Plaintiff further had normal language, speech, and attention, but had an emotional and anxious mood and behavior.  Plans included a brain MRI, neuropsychology testing, and lab work.  (Tr. 891-893).

On August 7, 2018, Plaintiff presented to Thomas Kibby, an occupational medicine specialist, to undergo an Independent Medical Evaluation at the request of an insurance company.  Plaintiff reported poor short-term memory.  (Tr. 873).  Plaintiff also noted he would cook on the grill when his wife is nearby, and he occasionally would drive to a store but not too far.  Plaintiff further noted that he becomes easily irritable.  Plaintiff admitted to being able to perform basic self-care and to doing rudimentary yard work.  Dr. Kibby noted Plaintiff was in no acute distress, was alert and oriented, and had a normal mood and affect.  (Tr. 875-876).  Impressions included depression and an anoxic brain injury resulting in memory loss, mood changes, cognitive loss, and irritability.  Dr. Kibby said, "[t]he memory impairment appeared much more significant than would be explained by depression alone," and Plaintiff "cannot carry out tasks that require higher executive function or any degree of sustained memory and recall."  Dr. Kibby noted it was unlikely Plaintiff would be able to carry out independent functions that require higher executive functions, and he would need to be restricted to activities performed under close supervision or direction.  (Tr. 878-879).

Plaintiff presented to Christine Paradee, a neuropsychologist, for a neuropsychological evaluation on August 10, 2018.  Plaintiff reported about various stressors and feeling depressed.  Dr. Paradee noted that Plaintiff was depressed.  Plaintiff

had normal speech and logical thought processes.  Plaintiff was also able to understand task instructions without repetition.  Dr. Paradee concluded that Plaintiff's working memory was extremely low and his perceptual reasoning abilities were average.  Dr. Paradee also concluded that Plaintiff's verbal comprehension, working memory, and speed of thought processing were mildly to moderately impaired.  (Tr. 862).  Dr. Paradee said, "[a]lthough he may have true cognitive deficits, with effort measures consistent with suboptimal effort, it is impossible to identify which deficits may be truly present and which may be the result of suboptimal/variable effort."  (Tr. 864).

Plaintiff presented to Dr. Mankad on September 11, 2018, complaining of short-term memory impairment.  Plaintiff reported sleep issues and becoming emotional and frustrated.  (Tr. 884).  An examination revealed Plaintiff was alert and oriented to person, place, and time.  Plaintiff was also in no apparent distress and exhibited normal language, speech, and attention.  Dr. Mankad was unsure if Plaintiff would be able to return to his previous work life due to various psychological issues.  The assessment included short-term memory issues, and plans included a referral for a psychologist or counselor and a follow-up with Dr. Mankad.  (Tr. 886-887).

## ANALYSIS

First, Plaintiff asserts the ALJ erred by failing to account for specific deficits of concentration, persistence, and pace within the RFC finding.  The ALJ's RFC assessment and the hypothetical question posed to the VE must both incorporate all the limitations that are supported by the record.  *See Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014).  This is a well-established rule.  *See Stewart v. Astrue*, 561 F.3d 679, 684 (7th Cir. 2009)(collecting

cases).   If the ALJ finds that a plaintiff has a moderate limitation in maintaining concentration, persistence or pace, that limitation must be accounted for in the hypothetical question posed to the VE.   The Seventh Circuit has repeatedly held, with exceptions not applicable here, that a limitation to simple, repetitive tasks, or unskilled work does not adequately account for a moderate limitation in maintaining concentration, persistence, or pace.   *See O'Connor-Spinner v. Astrue*, 627 F.3d 614, 620 (7th Cir. 2010); *Yurt v. Colvin*, 758 F.3d at 857; *Varga v. Colvin*, 794 F.3d 809, 814 (7th Cir. 2015); *Taylor v. Colvin*, 829 F.3d 799, 802 (7th Cir. 2016); *Moreno v. Berryhill*, 882 F.3d 722, 730 (7th Cir. 2018), as amended on reh'g (Apr. 13, 2018); *DeCamp v. Berryhill*, 916 F.3d 671, 676 (7th Cir. 2019).   "The ability to stick with a given task over a sustained period is not the same as the ability to learn how to do tasks of a given complexity."   *O'Connor-Spinner*, 627 F.3d at 620.

Here, the ALJ found that Plaintiff had moderate difficulties in maintaining concentration, persistence, or pace at step three of the sequential analysis when determining whether Plaintiff's mental impairments meet or equal a listed impairment. The ALJ noted that, while the step three determination is not a mental RFC assessment, the ultimate RFC assessment "reflects the degree of limitation [the undersigned has] found in the 'paragraph B' mental functional analysis."   (Tr. 20).

In regard to Plaintiff's mental limitations, the ALJ's RFC finding says, "[h]e can perform work limited to simple, routine, repetitive tasks involving only simple, work-related decisions, few, if any workplace changes, and no work with an assembly line or conveyor belt."   Plaintiff suggests this language does not adequately account for

moderate limitations in concentration, persistence, or pace.  More specifically, Plaintiff argues the RFC fails to address Plaintiff's ability to stick with a given task for a period of time.  The Court agrees.  A limitation to simple, routine, and rote tasks with little to no changes does not account for difficulties in concentration arising from mental health issues.  *See Varga*, 794 F.3d at 815.  Moreover, the ALJ used terminology in its analysis that the Seventh Circuit has continually viewed as insufficient.

There are two recent Seventh Circuit cases that speak directly to this issue: *Martin v. Saul*, 950 F.3d 369 (7th Cir. 2020) and *Crump v. Saul*, 932 F.3d 567 (7th Cir. 2019).  In *Martin*, the court held the ALJ correctly accounted for Martin's concentration, persistence, or pace limitations by not "assuming that restricting [Martin] to unskilled work would account for her mental impairments."  *Id*. at 374.  "The ALJ incorporated pace-related limitations by stating that Martin needed flexibility and work requirements that were goal-oriented."  *Id*.  On the other hand, the ALJ in *Crump* used language in the RFC that the Seventh Circuit has repeatedly found insufficient such as, "simple, routine, repetitive tasks with few workplace changes."  *Crump*, 932 F.3d at 569.  The court held the ALJ failed to incorporate limitations like Crump's likelihood of being off task twenty percent of the time.  *Id*. at 570.

Here, the ALJ did not go to the lengths as the ALJ in *Martin* did.  Rather, the present case is more similar to *Crump* in that the ALJ, without adding more, limited Plaintiff to work involving "simple, routine, repetitive tasks involving only simple, work-related decisions, [and] few, if any workplace changes."  This, as established above, is not enough.  It is true, however, that the ALJ went a little farther by indicating the need for

an elimination of "work with an assembly line or conveyor belt" within the RFC. Nevertheless, "observing that a person can perform simple and repetitive tasks says nothing about whether the individual can do so on a sustained basis, including, for example, over the course of a standard eight-hour work shift." *Crump*, 932 F.3d at 570. The Seventh Circuit put it succinctly in *Martin*:

> As we have labored mightily to explain, however, the relative difficulty of a specific job assignment does not necessarily correlate with a claimant's ability to stay on task or perform at the speed required by a particular workplace. . . . Put another way, someone with problems concentrating may not be able to complete a task consistently over the course of a workday, no matter how simple it may be.

*Martin*, 950 F.3d at 373-374.   Therefore, without more, the RFC does not adequately account for moderate limitations in concentration, persistence or pace.

The Commissioner relies in part on *Jozefyk v. Berryhill*, 923 F.3d 492 (7th Cir. 2019). There, the Seventh Circuit rejected the plaintiff's argument that the ALJ erred by omitting a reference to a moderate limitation in concentration, persistence, or pace from the RFC assessment and hypothetical question where "according to the medical evidence, his impairments surface only when he is with other people or in a crowd." *Jozefyk*, 923 F.3d at 498.   That case, however, is distinguishable from the case at hand.   The Seventh Circuit explained its holding in *Jozefyk* in a later case:

> In closing, we owe a word to the Commissioner's reliance on our recent decision in *Jozefyk v. Berryhill*, 923 F.3d 492 (7th Cir. 2019). We do not read *Jozefyk* to save the shortfalls in the ALJ's analysis here. In *Jozefyk*, we determined that any error in formulating the RFC was harmless because the claimant had not testified about any restrictions in his capabilities related to concentration, persistence, or pace, and the medical evidence did not otherwise support any such limitations. 923 F.3d at 498. As the Commissioner concedes, the facts here are different. The medical evidence

> plainly shows, and the ALJ recognized, that Crump suffers from CPP limitations. And, unlike in *Jozefyk*, Crump testified consistently with the medical treatment notes about how her bipolar disorder impairs her ability to concentrate well enough to work for a sustained period.

*Crump*, 932 F.3d at 571. Here, as in *Crump*, Plaintiff testified that he has difficulty focusing and concentrating due to his impairments, which is consistent with the medical treatment notes in the record. (Tr. 63).

The Commissioner suggests that, according to *Jozefyk*, Plaintiff should have cited to additional limitations that might have accommodated his symptoms. (Doc. 17, p. 17). The Court disagrees for the reasons stated above. At the evidentiary hearing, Plaintiff's attorney asked the VE if a person would be able to maintain employment if they were off task twenty percent of the workday, and the VE said, "[n]o." (Tr. 42-43). Being off task is an obvious limitation arising from impaired concentration and persistence.

Lastly, the Commissioner points out that the "B" criteria have been amended. In that regard, the Commissioner attempts to minimize the significance of the findings of moderate limitations by pointing out that "moderate" limitation means that a claimant's ability to maintain concentration, persistence, or pace independently, appropriately, effectively, and on a sustained basis is fair. *See* Revised Medical Criteria for Evaluating Mental Disorders, 81 FED. REG. 66138, 66164, 2016 WL 5341732 (Sept. 26, 2016)(effective Jan. 17, 2017). But a moderate limitation is not the same as "no" limitation. A "mild" limitation means that functioning is "slightly" limited and a "marked" limitation means that functioning is "seriously limited." Moderate is between mild and marked. *See* 81 FED. REG. 66138, 66164. Therefore, a moderate limitation is more than a slight limitation,

and the ALJ may not overlook the designation of moderate limitations in the RFC.

Further, these definitions do not represent a change in the meaning of these terms:

> Third, we have used the words "mild," "moderate," "marked," and "extreme" under our prior rules for many years. Although we did not provide definitions for most of these terms until now, the definitions in final 12.00F are consistent with how our adjudicators have understood and used those words in our program since we first introduced the rating scale in 1985. As a result, the definitions we provide in these rules do not represent a departure from prior policy.

81 FED. REG. 66138, 66147.

For the reasons stated above, the ALJ did not adequately account for concentration, persistence, or pace within the RFC finding.  Therefore, this deficiency requires remand.

Second, Plaintiff asserts the ALJ erred by cherry-picking evidence of minimal activity and equating it with a capacity to perform substantial gainful activity.  The Seventh Circuit has "repeatedly held that although an ALJ does not need to discuss every piece of evidence in the record, the ALJ may not analyze only the evidence supporting her ultimate conclusion while ignoring the evidence that undermines it." *Moore v. Colvin*, 743 F.3d 1118, 1123 (7th Cir. 2014).  Moreover, the ALJ must "engage sufficiently" with the medical evidence.  *Stage v. Colvin*, 812 F.3d 1121, 1125 (7th Cir. 2016).  The ALJ "need not provide a complete written evaluation of every piece of testimony and evidence." *Curvin v. Colvin*, 778 F.3d 645, 651 (7th Cir. 2015)(citation and internal quotations omitted).  However, the ALJ's discussion of the evidence must be sufficient to "provide a 'logical bridge' between the evidence and his conclusions." *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009), internal citations omitted.  The ALJ "cannot simply cherry-pick

facts supporting a finding of non-disability while ignoring evidence that points to a disability finding." *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010).

"An ALJ may not equate activities of daily living with those of a full-time job . . . . But an ALJ is not forbidden from considering statements about a claimant's daily life." *Jeske v. Saul*, 955 F.3d 583, 592 (7th Cir. 2020).   An ALJ may consider the claimant's activities of daily living to determine whether the claimant's symptoms are as high in severity as alleged.  *Id*. at 593.

Here, the ALJ only mentioned further findings by Dr. Kibby that were contrary to the ALJ's decision at Tr. 26 where the ALJ discussed giving Dr. Kibby's mental assessment little weight.  In the medical records section of the ALJ's decision, the ALJ only discussed the objective findings that were supportive of the ALJ's overall decision. The ALJ focused more on the activities of daily living Plaintiff reported to Dr. Kibby and how the mini mental status examination was normal.  The ALJ did not discuss Dr. Kibby's statements that, "[t]he memory impairment appeared much more significant than would be explained by depression alone," and "[Plaintiff] . . . cannot carry out tasks that require higher executive function or any degree of sustained memory and recall."  (Tr. 878-879). There was only a mere mention of evidence similar to this at Tr. 26 where the ALJ discussed why she gave little weight to Dr. Kibby's medical opinion.

The ALJ's error of excluding findings in conflict with her decision, or the ALJ's failure to engage sufficiently with said evidence, does, as a result, make it appear as though the ALJ equated evidence of Plaintiff's minimal activity with an ability to perform full-time work.  Had the ALJ sufficiently engaged with the medical evidence, specifically

regarding Dr. Kibby's full mental assessment, the ALJ's decision would not appear as such.

An ALJ's decision must be supported by substantial evidence, and the ALJ's discussion of the evidence must be sufficient to "provide a 'logical bridge' between the evidence and his conclusions." *Terry*, 580 F.3d at 475, internal citations omitted. Here, the aforementioned errors leave a gap in the ALJ's decision. Therefore, the Court concludes that the ALJ failed to build the requisite logical bridge in the instant matter.

This Memorandum and Order should not be construed as an indication that the Court believes Plaintiff was disabled during the relevant period or that he should be awarded benefits. On the contrary, the Court has not formed any opinions in that regard and leaves those issues to be determined by the Commissioner after further proceedings.

### CONCLUSION

The Commissioner's final decision denying Plaintiff's application for social security disability benefits is **REVERSED** and **REMANDED** to the Commissioner for rehearing and reconsideration of the evidence, pursuant to sentence four of 42 U.S.C. § 405(g).

The Clerk of Court is directed to enter judgment in favor of Plaintiff.

**IT IS SO ORDERED.**

Dated:  August 4, 2020.

Digitally signed
by Judge Sison
Date: 2020.08.04
09:57:52 -05'00'

**GILBERT C. SISON**
**United States Magistrate Judge**